No. 23,929.

A. B. Stanhope, *Appellee,* v. Rural High-school District No. 1 in Greenwood County, et al., *Appellants.*

SYLLABUS BY THE COURT.

1. School-bond Election—*Bonds Declared Invalid—Appeal—Second Election Called Pending Appeal—No Estoppel to Prosecute Appeal.* When the proceedings leading up to a proposed issue of school bonds to erect a high-school building are held invalid by a district court, and the judgment is brought to this court for review, and pending the appeal another bond election is duly called and held on the proposition to vote another and different amount of bonds and such proposition is defeated at the election, neither the discharge of the district officers' duty in calling the second election, nor the election itself, nor the levying of a tax to provide a fund to erect a school building, is sufficient to justify a dismissal of the appeal, nor did the discharge of their official duties operate as an estoppel of their right to prosecute their appeal.

2. Same—*Notices of Election Sufficient in Form.* Notices of a school-bond election on printed forms prepared by the state school-fund commission for general use throughout the state, but necessarily containing blank spaces in which time, place and similar details were inserted with pen and ink, were in due form and sufficiently complied with the statutory provision that such notices be printed or typewritten.

3. Same—*Location of High-school Building Sufficiently Designated.* A proposition to vote bonds for the erection of a high-school building "upon a suitable site to be selected in Reece, Greenwood county, Kansas," is a sufficiently precise location of the site to answer the purposes of the election, following *Miely v. Metzger,* 97 Kan. 804, 156 Pac. 753, and *School District v. Davis,* 99 Kan. 185, 160 Pac. 1008.

4. Same—*District Officer's Name Signed to Election Notice at His Direction by Another.* Where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own, and has the same validity as if written by himself.

5. Same—*Election Notices Valid.* On a printed form of notice calling a rural high-school bond election, the words "Board of County Commissioners" followed the blank lines for the signatures of the officers calling the election. The notice contained the signatures and official titles of the officers calling the election, but the words "Board of County Commissioners" were not stricken out. *Held,* that these words were mere surplusage and did not affect the validity of the notices.

6. Same—*Manner of Conducting a High-school Bond Election.* Under the rural high-school law (Laws 1917, ch. 284) a bond election may lawfully be conducted in the same manner as an ordinary school-district election, and in such case the Australian ballot law, which is designed for use in sub-

divisions of the state larger than a school district, has no application, following *Abrahams v. School District,* 97 Kan. 325, 155 Pac. 16.

7. SAME—*Ballots Used Sufficient.* The ballot used in this bond election, when read in the accompanying light of the official notices calling the election, was sufficient for the purpose of securing an intelligent expression of the will of the electors thereon, and was valid.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed March 11, 1922. Reversed.

*James G. Martin, Chester I. Long, Joseph D. Houston, Austin M. Cowan, Claude I. Depew, Forest D. Siefkin,* and *James G. Norton,* all of Wichita, for the appellants.

*S. F. Wicker,* and *Gordon A. Badger,* both of Eureka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   The plaintiff as a taxpayer brought this action to enjoin the defendant district board of a Greenwood county rural high school from issuing bonds in the sum of $50,000 which the district had voted for the purpose of constructing a school building. Plaintiff alleged that the proposed issue was subject to certain infirmities—that the notices of the election were neither printed nor typewritten as the statute requires, that the site of the proposed school building was not definitely fixed, that some of the notices were not personally signed by the members of the school board, that in some of the notices the members of the school board erroneously designated themselves as the board of county commissioners and not as the rural high-school board, and that the ballot used at the election did not conform to the requirements of the general election law relating to the submission of special propositions to be voted on by the people.

The trial court gave judgment in favor of plaintiff, enjoining the bond issue and the levying and collection of taxes thereon; and the school board appeals.

The plaintiff files in this court a motion to dismiss for the reason that, after the judgment in the trial court, another bond election was held pursuant to a call of the defendant school board, at which election the proposition to issue bonds for the construction of a high-school building was defeated; and that, in so doing, the defendants—

"Have treated the judgment of the district court in this action as valid, binding and proper and said actions of the appellants in calling said special election as aforesaid and resubmitting the question of the issuance of bonds for the erection of a high school in said district and making tax levy for school building are inconsistent with the invalidity of said judgment and by

reason of said facts the appellants are now estopped to question the propriety of the judgment rendered by the district court in this action and are now estopped from prosecuting this appeal."

It seems proper to consider this motion first. At the oral argument we were advised by counsel that the second bond election was held on the proposition to vote bonds in the sum of $30,000 to erect a high-school building. Now, the electors who gave their approval to an issue of $50,000 might well consider that an issue of $30,000 was inadequate, or if the $50,000 issue should be held by this court to be valid, the additional $30,000 would be unnecessary and superfluous. Furthermore, if a proper petition for the calling of the second bond election was duly presented to the defendant board, it had no choice but to call the election. The performance of its legal duty did not operate as an estoppel. Neither did the levying of a tax for a school building. The collection of such a tax will merely diminish the amount of bonds which the school board will be required to issue. (*Laswell v. Seaton,* 107 Kan. 439, 191 Pac. 266.) This motion to dismiss must be denied.

The trial court found generally for the plaintiff, without indicating which of the several grounds of objection to the bond issue was the basis of its judgment. This will require us to examine all the objections—a task somewhat tedious, but by no means difficult.

Taking these in order, the first objection was that the notice was neither printed nor typewritten as the statute requires. The statute says that printed or typewritten notices of a bond election shall be posted on the door of each schoolhouse in the rural high-school district. (Laws 1917, ch. 284, §§ 2, 5.) The notices so posted were on the printed forms furnished by the state superintendent of public instruction and the other members of the school fund commission. The notice itself is of course mandatory (*The State v. Bentley,* 80 Kan. 227, 101 Pac. 1073), but the form, printed or typewritten, is directory and merely for ease of legibility (*Jones v. The State,* 1 Kan. 273; *Gilleland v. Schuyler,* 9 Kan. 569, 586; 36 Cyc. 1157 *et seq.*). These prepared and printed forms, being made for general use throughout the state, necessarily have blank spaces which are to be filled up with the appropriate details of time, place, etc., pertinent to the particular locality where they are to be used. That these details were written in with pen and ink, or otherwise legibly inserted, in the blank spaces of the regular printed forms of notices, detracts naught from the validity of the notices. The objection to the form of the notices has no merit.

The next alleged defect in the proceedings was that the election notices did not definitely state the site of the proposed building. The notice invited the electors to vote on a bond proposition for a high-school building "upon a suitable site to be selected in Reece, Greenwood county, Kansas." From a glance at the map we learn that Reece is a village on a railway a few miles west of the county seat. Surely that was a sufficient designation. We have held that a site defined as "within Osawkie, Kansas," was sufficiently definite (*Miely v. Metzger*, 97 Kan. 804, 156 Pac. 753), and that "within or near the village of Rantoul" was likewise sufficient (*School District v. Davis*, 99 Kan. 185, 160 Pac. 1008).

The third defect urged was that the officers of the district did not in fact sign the notices—that one of them signed the names of the others. But the others sanctioned the signatures, which were written in their presence. It is familiar law that where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own, and has precisely the same validity as if he had written it himself. (Note in 22 L. R. A. 297; 36 Cyc. 450.)

Yet another defect pressed on our attention arose from the failure of the draughtsman who filled out the printed notices to strike out, at the foot of the places for signatures, the words "Board of County Commissioners." These rural high-school bond elections are frequently and properly called by the county commissioners at the same time that the vote is being taken to organize such high-school districts, in which cases they sign the notices for the bond elections. (Laws 1917, ch. 284, § 2.) But if the district is fully organized and has an official board of its own, the latter, of course, should call the bond election. (*Stewart v. Gish*, 109 Kan. 206, 198 Pac. 259.) It so often happens, however, that such bond elections are called by the county commissioners that the printed forms of notices for such elections are prepared for their signatures as "the Board of County Commissioners." In the case before us, the notices were signed thus:

"Bert Seymore, Director
"J. J. Klein, Clerk
"R. V. Dyer, Treasurer
."Board of County Commissioners."

The words "Board of County Commissioners" should have been stricken out; but the titles of the school officers followed their signatures, their authority to sign and call the bond election was

not questioned nor questionable; and the uncanceled words were clearly superfluous and could have misled nobody.

The final objection to the proposed bond issue went to the form of the ballot, which was as follows:

"OFFICIAL BALLOT.

"To vote in favor of the proposition submitted on this ballot, make an (X) mark in the square opposite the word 'Yes.' To vote against the proposition submitted on this ballot make a cross (X) mark in the square opposite the word 'No.'

"Shall the following be adopted?

<table>
<tr><td>"For the Bonds as proposed</td><td>YES □</td></tr>
<tr><td>"Against the Bonds as proposed</td><td>NO □</td></tr>
</table>

"Endorsements on ballot:

"Official Ballot Bond Election, Reece Rural High School Dist. No.· 1. March 26, 1921. John Klein, District clerk."

It is contended by plaintiff that this form of ballot does not comply with the provisions of section 4210 of the General Statutes of 1915, which prescribes the form of ballot to be used for the submission of constitutional amendments and other propositions referred to the electors for their approval or rejection at general elections. This section is part of the Australian Ballot Law adopted in 1897 (ch. 129) and later amendments. The first section of the act restricts its use to elections in political "subdivisions larger than a school district." So we start with the general proposition that elections concerning school-district affairs are not within the purview of the Australian ballot law. (*Lathen v. Campbell,* 7 Kan. App. 388, 51 Pac. 931.) This rural high-school statute itself provides:

"All elections held under the provisions of this act shall be governed by the general election laws of the state *when not contrary to this act.*" (Laws 1917, ch. 284, § 2.)

"That no bonds shall be issued unless authorized by an election held in accordance with section 2 of this act or *by an election held in accordance with sections 9177 and 9178 of the General Statutes of 1915.*" (Id. § 5.)

Sections 9177 and 9178 of the General Statutes of 1915 govern the matters of bond elections and bond issues in common school districts. It has been held that the Australian ballot law does not apply to bond elections in common school districts (*Abrahams v. School District,* 97 Kan. 325, 155 Pac. 16), and this statute of 1917 specifically provides that bond elections in rural high-school districts may be conducted in the same manner as bond elections in common-school districts. Nothing said in *Miely v. Metzger,* 97

Kan. 804, 156 Pac. 753, or *The State, ex rel., v. McPherson County,* 107 Kan. 144, 147, 190 Pac. 594, qualifies or limits the rule announced in *Abrahams v. School District,* supra.

Furthermore, there was very little the matter with the form of the ballot used in this election, even if the Australian ballot law were held to govern it. The notices of the election fully stated the proposition upon which the people were called upon to register their will. The proposition as abridged on the ballot did not mislead the voters. An analogous case, *Linn v. City of Omaha,* 76 Neb. 553, is in point. There the electors of the city of Omaha used a voting machine to register their will on a proposition to issue bonds to pay for fire-engine houses. On the ballot label on the voting machine the proposition necessarily had to be greatly abridged, but the election was held valid nevertheless. The court said:

"The inscription on the ballot label was not intended to furnish information to the voter in detail as to the object of the election. The proclamation was notice of the election and fully informed the electors of the object of the election. The object of the inscription was to instruct the voter as to how he might intelligently vote on the question of which the proclamation gave him notice. For this purpose the inscription was sufficient and within the provisions of the law." (p. 559.)

We have often held that irregularities in elections, where there had been departures from directory provisions of the statute, did not vitiate such elections where such irregularities did not frustrate or tend to prevent the free expression of the electors' intentions, nor otherwise to mislead them. And there is no room for such an intimation here. (See *The State, ex rel., v. Metzger,* 26 Kan. 395; *Clark v. Comm'rs of Montgomery Co.,* 33 Kan. 202, 6 Pac. 311; *Wilds v. State Board of Canvassers,* 50 Kan. 144, 32 Pac. 136; *Parker v. Hughes,* 64 Kan. 216, 67 Pac. 637; *Mathewson v. Campbell,* 91 Kan. 625, 138 Pac. 637.)

It must therefore be held that there was no infirmity in the proceedings leading up to this proposed issue of bonds.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for defendants.